IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

SEP 20 2011

CLERK, U.S. DISTRICT COURT
by_____
            Deputy

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 4:09-CV-256-A |
| KISELAK CAPITAL GROUP, LLC, ET AL., | § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
and
ORDER

After having considered the motion filed in the above-captioned action by defendant Jeffrey J. Sykes ("Sykes") on August 9, 2011, the appendix filed in support of such motion, the response in opposition to such motion filed by Lars L. Berg, Receiver, on August 30, 2011, and the reply brief filed by Sykes on September 13, 2011, the court has concluded that all relief sought by such motion should be denied.

I.

Background

On June 23, 2009, the Securities and Exchange Commission ("SEC") initiated the above-captioned action by the filing of a

complaint against Sykes and three other defendants[1] for violations of the Securities Act of 1993, the Securities Exchange Act of 1934, and securities trading regulations.  A final judgment was rendered on October 15, 2009, making Sykes jointly and severally liable with a co-defendant for payment of the total amount of $26,308,657.35 to Receiver for disposition pursuant to order of the court.

Receiver, whose duties include the taking of action to assist in the collection of the judgment, sought to obtain information about Sykes's assets through post-judgment discovery as authorized by Rule 69(a)(2) of the Federal Rules of Civil Procedure.  On May 13, 2011, Receiver served Sykes with interrogatories and requests for production, with a deadline for response of thirty days, or in this case, June 13, 2011.  Sykes failed to respond.  Receiver then sent Sykes a letter through his attorney, Robert C. Rosen, on June 28, 2011, requesting response. Sykes ignored that request, too.

On July 8, 2011, Receiver filed his first motion to compel, asking the court to require Sykes to respond to the discovery requests.  On July 21, 2011, the court rendered an order granting

---

[1] The three other defendants, the Kiselak Capital Group, LLC, Michael J. Kiselak, and Gemstar Gapital Group, Inc., are not parties to the motion to stay proceedings and for protective order.

the motion to compel.  The order required Sykes to deliver by

August 8, 2011, to the Receiver at his office (a) an answer to

each of the interrogatories, (b) for inspection and copying by

Receiver, each item called for by the requests for production,

and (c) a list describing each item being delivered and stating

the number of the specific request for production pursuant to

which each item is being produced.

Sykes did not comply with any part of the July 21, 2011

order.  Instead, he filed a document on August 9, 2011, titled

> Notice of Motion and Motion by Judgment Debtor Jeffrey
> Sykes for Protective Orders: (1) <u>Staying</u> Proceedings
> Against Him, Including a Stay of This Court's July 21,
> 2011 Order; (2) <u>Clarifying and Modifying</u> the July 21
> Order; (3) <u>Relieving</u> Mr. Sykes From His Delayed
> Response to Post-Judgment Discovery and From His
> Delayed Assertion of His Fifth Amendment Privilege
> Against Self-Incrimination; (4) <u>Denying Sanctions</u> as
> Moot and (5) Related Relief; Brief and Declarations in
> Support

accompanied by an appendix that contained what purported to be

responses by Sykes to the interrogatories and requests for

production.  Other than to provide his name in answer to the

first interrogatory, Sykes did not provide any of the information

called for by any of the twenty-one interrogatories.  Instead, he

said that he was refusing to respond to the discovery request

based on his rights under the Fifth Amendment to the Constitution

of the United States.  Sykes said the same thing in response to
each of the forty-six requests for production of documents
Receiver had directed to him on May 13, 2011.  He failed to
produce any documents or to make any response concerning
availability of requested items.

The document filed by Sykes on August 9, 2011, is the motion
to which this memorandum opinion and order is directed.

## II.

### Analysis

The court concludes that none of the relief sought by Sykes
in his motion has any merit.  Each request for relief is
addressed in turn.

A.   Stay of Proceedings

This case involves a federal civil action--already
concluded--and a possible federal criminal prosecution--not yet
initiated.  The Fifth Circuit has held that "[t]here is no
general federal constitutional, statutory, or common law rule"
prohibiting simultaneous, parallel civil and criminal actions
brought "by different federal agencies against the same defendant
involving the same transactions."  SEC v. First Fin. Grp. of
Tex., Inc., 659 F.2d 660, 666 (5th Cir. 1981).  Thus, whether to
stay a civil action pending resolution of a parallel criminal

4

prosecution is not a matter of legal right, but rather, one of judicial discretion.

In deciding whether to stay discovery in light of a party's Fifth Amendment privilege, a court must balance the interests of the party asserting the privilege against any prejudice resulting to the other parties. See Wehling v. Columbia Broad. Sys., 608 F.2d 1084, 1088 (5th Cir. 1979). A complete stay is considered an extraordinary remedy, namely because it is tantamount to a defendant's "blanket assertion" of the Fifth Amendment, which is itself improper. See United States v. Goodwin, 625 F.2d 693, 701 (5th Cir. 1980). There is a strong presumption in favor of discovery in a civil case. See Alcala v. Tex. Webb Cnty., 625 F. Supp.2d 391, 397-98 (S.D. Tex. 2009). The party moving for a stay bears the burden of overcoming that presumption. See id.

In determining whether to stay a civil case where a criminal case may be pending, the court must consider the following six factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and

burden on the defendant; (5) the interests of the courts; and (6) the public interest.  See Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).[2]

    1.  Overlap of Criminal and Civil Issues

The first and most important factor is the degree to which the civil issues overlap with the criminal issues.  The risk of self-incrimination is more likely if there is significant overlap between the issues in the civil and criminal cases.  The existence of an overlap cannot be discerned in the present situation.  There is no indictment, and therefore no criminal case.  Other courts have found that the lack of an indictment alone may be enough to deny a stay.  See, e.g., Alcala, 625 F. Supp.2d at 401.  Without an indictment, any analysis of overlap in this case is speculative.

Sykes also has not provided sufficient information for the court to discern whether there is an overlap between the discovery sought in this civil case and the still-unfiled

---

[2] Other district courts in the Fifth Circuit have applied the Plumbers and Pipefitters six-factor test in determining whether to grant a stay of a civil proceeding. See, e.g., Alcala v. Tex. Webb Cnty., 625 F. Supp. 2d 391, 401 (S.D. Tex. 2009); United States ex rel. Gonzalez v. Fresenius Med. Care N. Am., 571 F. Supp. 2d 758, 762 (W.D. Tex. 2008); SEC v. Mutuals.com, Inc., 2004 WL 1629929, at *3 (N.D. Tex. July 20, 2004); Librado v. M.S. Carriers, Inc., No. 3:02-CV-2095D, 2002 WL 31495988, at *2 (N.D. Tex. Nov. 5, 2002).

criminal case.  While the evidence offered shows that a criminal investigation has been initiated, the evidence does not elaborate upon the factual allegations underpinning the investigation nor the criminal charges that Sykes could be facing.  The evidence that Sykes offers includes an affidavit from his lawyer, an email from a U.S. Attorney, and a grand jury subpoena from March 17, 2010.  None of these documents shed further light on the substance of the potential criminal charges or their factual basis.[3]  In the absence of any specifics, the court cannot say whether the criminal investigation even arises from incidents, let alone issues, related or similar to the discovery disclosures Receiver seeks.  In short, this factor weighs against granting a stay.

---

[3]The affidavit of Robert Rosen, Sykes's counsel, states: "[T]here is a criminal investigation relating to the allegations in this action. I have been contacted by the Federal Bureau of Investigation, the latest being on Monday May 2, 2011 inquiring from me whether Mr. Sykes would respond to a subpoena apparently issued by the U.S. Attorney's Office." Def.'s Mot. to Stay, at 24, Ex. 1, Decl. of Robert Rosen. The email from the federal prosecutor states: "I am heading up the investigation of your client. I understand you are exploring the possibility of hiring a criminal attorney to represent him in this matter. When you have finalized those arrangements, please contact me so we can discuss how to proceed with Mr. Sykes' case." Def.'s Reply Mot., Ex. 1. The grand jury subpoena, which was issued by the U.S. Attorney's Office to Sykes, as the custodian of records for Gemstar Capital Group, Inc., requested information about Gemstar's corporate, accounting, and investor records, such as bank account records and financial statements. See Def.'s Opp. Mem. to Receiver's Second Mot. to Compel, Ex. 1.

2.   Status of Criminal Case

The second factor to consider is the status of the criminal case. "A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." Librado v. M.S. Carriers, Inc., No. 3:02-CV-2095D, 2002 WL 31495988, at *2 (N.D. Tex. Nov. 5, 2002).

As the court has discussed, Sykes is merely under investigation. And, the court is not convinced that criminal charges are forthcoming or that a criminal prosecution is imminent. The record does not reveal anything definitive about the status of the proceedings, other than the fact that an investigation is pending. Therefore this factor also weighs against granting a stay.

3.   Private Interests of and Prejudice Against Receiver

Under the third factor, Receiver's interests in proceeding expeditiously are weighed against any prejudice that might be caused by the delay resulting from the stay. Receiver has a high

8

interest in proceeding expeditiously in collecting on the
judgment before Sykes's assets are hidden or sold.  As Receiver
has noted, two substantial assets have been located that may be
executed to satisfy part of the judgment against Sykes.  These
include stock certificates held by Sykes in a privately held
company and cash in at least one bank account.

The potential prejudice of a delay is plain: Sykes may hide
the assets and avoid having to pay the judgment.  Worse, Sykes
may sell the assets and they will never be recovered.  Given that
a stay would further prolong already delayed collection efforts,
the court believes the third favor weighs against granting such a
stay.

4.   Private Interests of and Burden on the Defendants

The fourth factor considers the private interest of the
defendant in securing the stay and the burden that would result
if the stay were denied.  At this time, no substantial prejudice
to Sykes is discernable from denying a stay.  While Sykes may
face a conflict between asserting his Fifth Amendment privilege
and fulfilling his legal obligation in civil discovery in the
future, there is no current conflict facing him.  That is because
no criminal indictment has been issued.

Denying the stay could be burdensome to Sykes if the criminal investigation involved the same facts or issues presented by the discovery requests; but, Sykes does not meet his burden to establish the presence of this threat.  The court concludes the fourth factor also weighs against granting a stay.

     5.   <u>Interests of the Courts</u>

As to the fifth factor, the courts have a strong interest in moving matters expeditiously through the judicial system.  The final judgment against Sykes was issued in October 2009.  Nearly two years later, Sykes has still not paid the judgment.  The courts have a stake in ensuring that judgments are respected. The courts' interests therefore weigh in favor of denying a stay at this point in the proceedings, when the litigation has already concluded and a final judgment has already been issued.

     6.   <u>The Public's Interest</u>

The public has an interest in the just and constitutional resolution of disputes with minimal delay.  While the prompt resolution of this case in light of defendant's privilege is important, it is equally important to consider Receiver's right to receive through discovery information that will assist in accomplishing the disgorgement ordered by the judgment.  The final judgment that Sykes owes is intended to disgorge the losses

10

of investors wronged by Sykes and the other defendants in the SEC

civil action.  See Dec. 17, 2010 Order; Oct. 15, 2009 Final

Judgment.  Those individuals will no doubt benefit from the

expeditious disbursement of this award.  Therefore, the public's

interest will not be best served by granting such a stay and

further prolonging the process.

*     *     *     *     *

Based on a consideration of all the factors, the court

concludes that it should not stay post-judgment discovery from

Sykes until the criminal investigation against him is resolved.

B.    <u>Sykes's Assertion of Fifth Amendment Privilege Is
      Untimely and Is Otherwise Inadequate as Well</u>

The court turns to the next issue, of whether Sykes should

be relieved from post-judgment discovery based on his untimely

assertion of a Fifth Amendment privilege.  His failure to timely

assert the privilege amounted to a waiver of the privilege.  And

even if it were not deemed a waiver, Sykes's objections still

fail for lack of specificity with respect to the information

sought.

1.    <u>Waiver</u>

Sykes's first assertion of the privilege occurred on August

9, 2011, a total of 57 days after the original deadline to

11

respond to the discovery requests.   The interrogatories and
requests for production of documents were served upon Sykes,
pursuant to Rule 69(b) of the Federal Rules of Civil Procedure,
which governs post-judgment discovery.[4]   Rule 33(b)(2), which
governs the time for answering or objecting to interrogatories,
requires, in pertinent part, that "[t]he responding party must
serve its answers and any objections within 30 days after being
served with the interrogatories."   Rule 34(b)(2) required Sykes
to respond to the requests for production of documents within
thirty days after service of the requests, and Sykes was
obligated to state in his response any objection he had to any of
the requests.

Sykes ignored the deadlines, as well as the letter that
Receiver sent requesting compliance.   After the court issued an
order granting Receiver's motion to compel and requiring that
Sykes respond to the requests on August 8, 2011, Sykes ignored
that order.   As the record shows, Sykes chose not to assert his
privilege until long <u>after</u> the deadlines imposed by the Rules of
Procedure had passed--nearly two months after the interrogatories

---

[4]Rule 69 provides that Receiver, as the "judgment creditor[,] . . . may obtain discovery
from any person—including the judgment debtor—as provided in these rules . . . ." Fed. R. Civ.
P. 69.

and requests for production were served.  This was sixteen months
after he knew that his company was under investigation from the
U.S. Attorney's Office, and twenty-one months after a final
judgment had been issued against him.

Generally, in the absence of an extension of time or good
cause, the failure to object to requests for discovery within the
time fixed the Federal Rules of Civil Procedure constitutes a
waiver of any objection.  See In re United States, 864 F.2d 1153,
1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to
object timely to interrogatories, production requests, or other
discovery efforts, objections thereto are waived.").  This
principle of waiver applies to an objection that the information
sought is privileged under the Fifth Amendment.  See Davis v.
Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) (holding that
appellant failed to support his claim of Fifth Amendment
privilege to answer interrogatories because he had waived it
through an untimely assertion).  Therefore, Sykes, absent a
showing of good cause, has waived his right to assert an
objection to the discovery requests based on his Fifth Amendment
privilege.

13

2.   Good Cause

Sykes claims he failed to timely respond to Receiver's discovery because his "attorney reasonably believed that the service of the Personal Assets Discovery was not proper." Mot. at 20.   Apparently the attorney, Robert C. Rosen, contends that he was relying on his understanding of California law.   Id. at 10, ¶ 3.   This claim falls flat for two reasons.   First, any attorney would know that the federal rules or Texas practice, not California law, govern the post-judgment discovery served in the above captioned case.   See National Gas Pipeline Co. of Am. v. Energy Gathering, Inc., 2 F.3d 1397, 1405 (5th Cir. 1993); Fed. R. Civ. P. 69(a)(2).   And second, Sykes's attorney's professed mistaken belief about the law, even if honest, would not constitute "excusable neglect."   Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 392-96 (1993) (holding that "clients must be held accountable for the acts and omissions of their attorneys"); Halicki v. La. Casino Cruises, Inc., 151 F.3d 465, 470 (5th Cir. 1998).   In other words, the law does not excuse Sykes's untimely assertion simply because his lawyers professed unfamiliarity with the federal rules.

14

3.   <u>Lack of Specificity</u>

Even if the court were to entertain the notion that Sykes
has not waived his privilege, his assertion fails for lack of
specificity.   In raising a Fifth Amendment objection, a party
must selectively invoke the privilege against self-incrimination
and "object with specificity to the information sought from him."
See <u>First Fin.</u>, 659 F.2d at 668.   This allows a district court to
conduct "a particularized inquiry, deciding in connection with
each specific area that the questioning party seeks to explore,
whether or not the privilege is well-founded.   <u>See</u> <u>United States</u>
<u>v. Melchor Moreno</u>, 536 F.2d 1042, 1049 (5th Cir. 1976).   Whether
a party is entitled to the protection of the privilege is for the
court to decide, not the invoking party. <u>See</u> <u>First Fin.</u>, 659 F.2d
at 668.

Sykes's objections are not specific enough for the court to
decide whether the privilege is well-founded.   For example, Sykes
has claimed his Fifth Amendment privilege in response to
questions about his address, his social security number, and
about the address of his place of employment (Interrogs. 1 & 2).
Additionally, and inexplicably so, Sykes asserts his Fifth
Amendment privilege to questions about his ownership in any real
estate (Interrog. 4), any vehicles (Interrog. 8), and any boats

or other types of watercraft (Interrog. 13). He has also refused

to provide any information about any of his bank accounts

(Interrog. 5), or any information about his ownership of any

stocks (Interrog. 14), on those same Fifth Amendment grounds.

Sykes has not given the court any reason to believe that a

responsive answer or an explanation for his refusals to respond

would present a danger of self-incrimination. As evidence of the

pending criminal investigation, Sykes has attached a grand jury

subpoena from March 17, 2010. But this subpoena does not seek

any information about Sykes's personal assets, and it alone does

not shed any further light on the issue. See Def.'s Resp. to

Receiver's Second Mot. to Compel, Ex. 1. Sykes does not explain

the context behind his subpoena; for instance, he does not

explain whether he has testified on those matters before the

grand jury or whether he even responded to that subpoena.

Additionally, the Fifth Circuit has held that the mere fact

that evidence might be used in a later prosecution will not

support a claim of self-incrimination. See United States v.

Roundtree, 420 F.2d 845, 852 (5th Cir. 1969). Even if the danger

of self-incrimination is great, the defendant's remedy is not to

voice a blanket refusal to produce his records or to answer an

interrogatory.  Instead, as previously discussed, he must object with specificity.

Confronted with inadequate information, the court is not in a position to conjecture about the possibility or potential nature of criminal proceedings.  It is not self-evident that any disclosure of Sykes's assets would form a link to the chain of evidence of some crime.  The court concludes that even if the objections had been timely made, Sykes did not meet his burden to show that he has asserted the objections with sufficient specificity.

### 4.   Sykes Is Not Entitled to Relief from His Discovery Delinquencies

Sykes includes in his motion a request that he be relieved from his delay in responding to the discovery.  Mot. at 20-22. As previously noted, the only reason given in the motion for the delay is the statement that "Mr. Sykes' attorney reasonably believed that service of the Personal Assets Discovery was not proper."  Id. at 20.  Such an excuse borders upon, if it is not outright, frivolousness.  Rule 69(a)(2) could not more pointedly authorize post-judgment discovery of the kind Receiver served on Sykes in May 2011.  When Receiver by his June 28, 2011 letter urged Sykes and his attorney to respond to the discovery

requests, he told Sykes and his attorney that Receiver's discovery requests were permitted under Rule 69 and the case law interpreting that rule. 1st Mot. to Compel, App. Tab 4. The pretense by Sykes's attorney that he did not understand does not speak well for the attorney. Sykes has not provided any plausible reason why he should be relieved of his delay in responding.

C.   Clarification of Order

Sykes next requests the clarification of the third paragraph of the court's July 21, 2011 order when that portion is already patently clear. That portion applies only to the taking of an oral deposition of Sykes. It reads:

> The court further ORDERS that if Receiver notices the taking of the oral deposition of Sykes, Sykes respond to the notice by appearing at the time, date, and place specified in the notice for the giving of <u>his oral deposition</u>, and that he cooperate in the answering of questions posed to him during the taking of his oral deposition, with the proviso that <u>if Sykes considers that there is anything legally inappropriate concerning the notice of the questions being posed to him, the court authorizes Sykes to file an appropriate motion for protection</u>.

Order of July 21, 2011, at 2 (emphasis added).

Sykes was authorized by the quoted language to file an appropriate motion for protection if he wished to object to any questions during an <u>oral deposition</u> if one were to be taken in

18

the future.   This third paragraph says nothing about objections
to <u>written discovery</u>.   Additionally, the second paragraph on page
2 of the order, which concerns the already-served interrogatories
and requests for production, says nothing remotely to suggest
that Sykes was entitled to object to the discovery requests.   The
order could not have more clearly stated that Sykes was ordered
to deliver to Receiver at the specified time and place "separate
and full answers, each made under Sykes's oath, to each of the
interrogatories," and could not have made any clearer that Sykes
was being ordered to deliver all of the requested documents to
Receiver at the specified time and date.   <u>Id.</u>   The wording of the
order left no room for a plausible argument that the court
authorized objections rather than compliance.

Because the July 21, 2011 order was clear and easy to
understand, the court concludes that Sykes's request for
clarification of the order should be denied.

D.   <u>Sanctions</u>

Sykes's final request is to have the court deny sanctions
against him as moot.   The court declines to grant this request.
Under Rule 37 of the Federal Rules of Civil Procedure, "[i]f the
court where the discovery is taken orders a deponent to be sworn
or to answer a question and the deponent fails to obey, the

failure may be treated as contempt of court." In a civil

contempt proceeding, the party seeking an order of contempt need

only establish (1) that a court order was in effect, (2) that the

order required certain conduct by the respondent, and (3) that

the respondent failed to comply with the court's order. See

Martin v. Trinity Indus., Inc., 959 F.2d 45, 47 (5th Cir. 1992).

In this case, Sykes has not answered any of the interrogatories

other than his name, and has not produced a single document

requested. Sykes has not met his duty to make in good faith all

reasonable efforts to comply, nor has he presented any relevant

defense for his failure to meet the deadline. Therefore,

sanctions under Rule 37 against Sykes are not moot.[5]

III.

### Conclusion and Order

To sum up, the court is not convinced that a stay or a

protective order is warranted. Sykes has already twice flouted

the discovery deadlines imposed. Sykes has also failed to

present any valid excuse for the now untimely assertion of his

objection to the discovery requests. Because Sykes has waived

[5]The court notes that Receiver states in his response to Sykes's motion that "[c]ounsel for Sykes and the Receiver have reached an agreement relative to the fee award requested by the Receiver in his original motion to compel." Resp. at 8. Therefore, the court will not include in any fee award or sanction against Sykes and/or his attorney any fee based on work done by Receiver through the filing of his original motion to compel.

his right to object, and for the other reasons stated above, the court concludes that Sykes's motion is without merit.  Therefore,

    The court ORDERS that all relief sought by Sykes's motion be, and is hereby, denied.

    SIGNED September 20, 2011.


_____
JOHN McBRYDE
United States District Judge

21