

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB -3 2012

CLERK, U.S. DISTRICT COURT
by_____
            Deputy

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | NO. 4:09-CV-256-A |
| KISELAK CAPITAL GROUP, LLC, ET AL., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION
and
## ORDER

Came on for consideration the request filed by Receiver,

Lars Berg, on December 2, 2011, for attorney's fees pursuant to

Rule 37(b)(2)(c) of the Federal Rules of Civil Procedure.  In the

request, Receiver asks that Robert Rosen ("Rosen"), former

counsel to defendant Jeffrey Sykes ("Sykes"), be required to pay

the reasonable fees incurred by the Received caused by the

failure of Sykes to comply with the court's discovery order of

July 21, 2011.  Having considered the parties' filings, the

record in this case, and applicable legal authorities, the court

has concluded that the request for attorney's fees should be

granted and that Receiver should be awarded a total fee of

$14,194.00.

I.

Background

The court will provide only a summary of the facts relevant to the request for attorney's fees, as the background of the preceding events has already been adequately set out in the court's orders dated July 21, 2011 ("July 21 Order"), September 20, 2011 ("Sept. 20 Order"), September 21, 2011 ("Sept. 21 Order"), and September 29, 2011 ("Sept. 29 Order").

On June 23, 2009, the Securities and Exchange Commission ("SEC") filed a complaint against Sykes, along with three other defendants,[1] for various violations of the securities trading laws and regulations. A final judgment was issued on October 15, 2009, making Sykes jointly and severally liable for a total of $26,308,657.35. Receiver, who was appointed to collect the judgment on behalf of the SEC, unsuccessfully sought to obtain information about Sykes's assets through post-judgment discovery. On July 8, 2011, Receiver filed the first motion to compel. The court granted that first motion to compel in the July 21 Order, requiring compliance on August 8, 2011. Sykes waited until August 9, 2011, to file a response, in which he asserted for the

_____

[1]The three other defendants, the Kiselak Capital Group, LLC, Michael J. Kiselak, and Gemstar Gapital Group, Inc., were not party to the underlying discovery dispute or this request for attorney's fees.

2

first time his Fifth Amendment privilege from self-incrimination as an objection to each and every interrogatory and request for production of documents.  Sykes then filed a motion to stay proceedings and for protective order.

On August 31, 2011, Receiver filed an opposition to Sykes's motion to stay proceedings and for protective order.  Receiver also filed on the same day a second motion to compel, seeking to enforce the terms of the court's July 21 Order mandating that Sykes provide the requested discovery.  Sykes finally provided the requested discovery on October 4, 2011.

In the underlying discovery dispute, Receiver filed two motions to compel discovery; Sykes filed one motion to stay proceedings and for protective order; and Receiver filed an opposition to Sykes's motion to stay proceedings and for protective order.  Receiver seeks an award of attorney's fees from Rosen to cover Receiver's work related to the second motion to compel filed on August 30, 2011, the opposition to the motion to stay proceedings and for protective order filed on August 30, 2011, and the request for attorney's fees filed on December 2, 2011.

During a telephone conference on October 5, 2011, the court stated that it would give the parties an opportunity to resolve any dispute over the amount of attorney's fees for the work

3

Receiver did to obtain discovery from Sykes.  On the same day, the court granted the motion of Rosen and John Wallace to withdraw as counsel for Sykes.[2]

Receiver and Rosen were unable to reach an agreement as to the fees that Rosen should be required to pay.  On December 2, 2011, Receiver filed a request for attorney's fees against Rosen. In the request, Receiver noted that Sykes had insufficient funds and asked that Rosen be required to pay the reasonable expenses, including reasonable attorney's fees, that were incurred by the receivership by reason of Sykes's failure to comply with the court's July 21 Order.  Receiver stated that under Rule 37(b)(2)(C), the court could award attorney's fees against the attorney advising a disobedient party.  Receiver argued that the award was warranted, because it was Rosen's advice that created the very situation that led to the need for the second motion to compel.

Receiver attached an affidavit and time sheet with a table detailing the hours expended on the efforts to obtain discovery from Sykes, along with the reasonable hourly rates charged by Receiver, and Mary Smith ("Smith"), an associate at Receiver's law firm who also worked on the matter.  Req. for Attorneys'

---

[2]New counsel's entry of appearance was filed, and Edwin Tomko and Jeffrey Ansley became new counsel for Sykes.

Fees, App., Ex. A., Berg Decl.  Receiver requested a total of
$10,746.50 for attorney's fees, with $8,890 allocated to 25.4
hours of work done by Receiver and $1,856.50 allocated to 7.9
hours of work completed by Smith and supervised by Receiver.  Id.

On January 12, 2012, Rosen filed an opposition memorandum in
response to Receiver's request for attorney's fees, arguing that
Sykes did comply with the July 21 Order, and even if Sykes had
not been in compliance, Rosen was under no obligation to pay
Receiver any amount in attorney's fees.  Rosen contended that
Sykes was substantially justified in his decision to disregard
the July 21 Order and assert his Fifth Amendment right, and that
the award of fees under these circumstances would be unjust.
Specifically, Rosen argued that his advice to his former client
to assert the Fifth Amendment privilege against self-
incrimination was well-founded on case law, and pointed to
Supreme Court precedent in Maness v. Meyers, 419 U.S. 449 (1975),
as a shield to any discovery sanction against Rosen.  To bolster
his claim that his advice was given in good faith, Rosen attached
an appendix that included an affidavit describing his
communications with Receiver, and a copy of Sykes's responses to
the written discovery and a subpoena from Receiver dated August
10, 2009.

Receiver filed a reply and attached another affidavit and time sheet, requesting an additional $4,200 for 12 hours of work Receiver expended on drafting the reply to Rosen's response. Reply Br., Supplemental Berg Decl.  In the reply, Receiver argued that <u>Maness</u> did not apply, because Rosen's advice to Sykes to ignore the discovery requests was not substantially justified or provided in good faith.  Given that, Receiver argued, Rule 37 made the award of attorney's fees mandatory in this case.

The court now turns to the applicable standard, and applies the standard to the circumstances of this case.

II.

<u>Analysis</u>

A.   <u>Standard</u>

1.   <u>Rule 37 Discovery Sanctions for Noncompliance with Court Order</u>

Receiver has requested pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure that he recover the reasonable expenses incurred by Receiver when Sykes failed to comply with the July 21 Order.  Rule 37(b)(2)(C) grants the court authority to award reasonable expenses, including attorney's fees, when a party fails to obey an order of the court requiring that the party provide discovery:

> If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or

6

31(a)(4)--fails to obey an order to provide or permit
discovery, including an order under Rule 26(f), 35, or
37(a), the court where the action is pending may issue
further just orders.

. . . .

. . . Instead of or in addition to the orders
above, the court must order the disobedient party, the
attorney advising that party, or both to pay the
reasonable expenses, including attorney's fees, caused
by the failure, <u>unless the failure was substantially
justified or other circumstances make an award of
expenses unjust</u>.

Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Rule 37(b)(2)(C) therefore mandates the award of attorney's
fees, unless the failure to comply with the court order was
"substantially justified," or "other circumstances make an award
of expenses unjust." <u>Id.</u>  The burden rests on the party who
failed to comply with the order to show that an award of
attorney's fees would be unjust or that the opposing party's
position was substantially justified.[3]  <u>Poly-America, L.P. v.
Stego Indus., L.L.C.</u>, No. 3:08-CV-2224-G, 2011 WL 1583913, at *2
(N.D. Tex. Apr. 26, 2011).

-----

[3]The court notes that recovery of attorney's fees could also be had under Rule 37(a)(5)(A).
Rule 37(a)(5)(A) awards attorney's fees to a party who successfully brings a motion to compel or
a party who successfully opposes a motion for protective order. Fed. R. Civ. P. 37(a)(5)(A).
Rule 26(c)(3), which governs motions for protective orders, applies the provisions of Rule
37(a)(5)(A) to the grant or denial of a motion for protective orders. <u>See</u> <u>Rose v. First Colony
Cmty. Servs. Ass'n, Inc.</u>, 199 F.3d 440, 1999 WL 1068252, at *1 (5th Cir. Oct. 22, 1999)
(referring to Rule 37(a)(5) as its predecessor, Rule 37(a)(4)).

B.   <u>Discussion</u>

In his opposition memorandum, Rosen contends that he should not be required to pay attorney's fees to Receiver since (1) Sykes adequately responded to the discovery requests and complied with the court's July 21 Order;[4] and (2) even if these responses were inadequate and non-compliant, Sykes was substantially justified in asserting his Fifth Amendment right in response to the discovery.[5]   Furthermore, Rosen contends that (3) the circumstances would make an award of fees unjust, because Rosen acted in good faith in advising Sykes to assert his Fifth Amendment right, and because the Supreme Court's decision in <u>Maness</u> protects Rosen from being penalized for providing such advice.[6]

The court, after evaluating each argument in turn, concludes that none of them has any merit.

---

[4] This argument appears under subheading A of Rosen's opposition memorandum, titled "Mr. Sykes did comply with the July 21, 2011 Court Order."  Opp. Mem. of Rosen at 7-8.

[5] This argument appears under subheading B.1, titled "Mr Sykes's Supposed Failure to Comply with the Court's July 21, 2011 Order was Substantially Justified." <u>Id.</u> at 8-10.

[6] These arguments appear under subheading B.2, titled "Other Circumstances Make an Award of Expenses Unjust," and under subheading C, titled "The United States Supreme Court Strongly Disfavors Punishing an Attorney for Advising a Client to Assert his Fifth Amendment Right." <u>Id.</u> at 11-13.

1.   <u>The Inadequacy of Sykes's Responses</u>

First, Rosen argued that Sykes "adequately responded to discovery and complied" with the July 21 Order, because Sykes "asserted his right against self-incrimination in accordance with the Supreme Court's interpretation of the Fifth Amendment." Opp. Mem. of Rosen at 8.

Rosen's description of Sykes's conduct glosses over the true chain of the events leading up to this dispute. Rosen claims Sykes complied with court's July 21 Order. However, this dispute did not begin with the July 21 Order. On the contrary, Sykes was presented with several opportunities to respond to Receiver's interrogatories and requests for production throughout May through July 2011, but instead repeatedly chose to do nothing. Then, even after the court issued the July 21 Order, Sykes refused to comply with its requirements mandating a response on August 8. In his overdue and incomplete response filed on August 9, he gave no basis for why a blanket assertion of his Fifth Amendment privilege, raised for the first time, could protect him from disclosing standard identifying information such as his address.

It is apparent to the court that Sykes's answers and responses did not adhere to the standards governing answers and responses under the Federal Rules of Civil Procedure. "Each

9

interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." <u>See</u> Fed. R. Civ. P. 33(b)(3). An evasive or incomplete disclosure is treated as a failure to answer or respond. Fed. R. Civ. P. 37(a)(4). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

Under these standards, Sykes's filing of the August 9 pleading could hardly have been considered to be complete or sufficiently specific. As the court explained in its Sept. 20 Order, Sykes's answers and responses were inadequate, and the objections he put forth were too vague to demonstrate the grounds of his Fifth Amendment privilege. That conclusion remains unchanged, and the court is still of the view that Sykes failed to adequately respond to the discovery requests or to comply with the July 21 Order.

### 2. <u>No Substantial Justification</u>

Having concluded that Sykes did not comply with the July 21 Order, the court turns to the next point raised by Rosen. In this argument, Rosen contended that even if Sykes's responses failed to comply with the July 21 Order, Sykes was substantially

justified in asserting his Fifth Amendment right, in order to prevent self-incrimination in an ongoing criminal investigation.

The court finds this point to be baseless as well.  The mere fact that evidence might be used in a later prosecution will not support a claim of self-incrimination.  See United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1969).  In its Sept. 20 Order, the court stated:

> Even if the court were to entertain the notion the Sykes has not waived his privilege, his assertion fails for lack of specificity.  In raising such an objection, a party must selectively invoke the privilege against self-incrimination and "object with specificity to the information sought from him."  [See SEC v. First Fin. Group of Texas, Inc., 659 F.2d 660, 668 (5th Cir. 1981).]

Sept. 20 Order at 15.

Sykes neglected to give the court "any reason to believe that a responsive answer or an explanation for his refusals to respond would present a danger of self-incrimination."  Id. at 16.  Although Sykes attached a grand jury subpoena from March 17, 2010, he utterly failed to provide any additional context, such as whether he testified before the grand jury or even responded to that subpoena.  As the Sept. 20 Order explained, the court was thus not convinced that a true danger to self-incrimination existed.

11

The court likewise remained unpersuaded by Sykes's motion for reconsideration, which attached an affidavit from Rosen describing a telephone conversation he had on September 21, 2011, with a federal prosecutor about a criminal investigation involving Sykes. Sept. 29 Order at 2. In its Sept. 29 Order, the court determined that the motion for reconsideration and affidavit provided insufficient information to show there was a significant overlap between the discovery sought in the civil case and the issues in the criminal case.

In light of its earlier conclusions, the court believes that Sykes's position in asserting the privilege and disregarding the July 21 Order was not substantially justified. A party's discovery conduct is found to be "'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" Devaney v. Continental Am. Ins. Co., 989 F.2d 1154, 1163 (11th Cir. 1993) (citing to Pierce v. Underwood, 487 U.S. 552, 565 (1988). Rosen has not shown that reasonable people could genuinely differ on whether Sykes was bound to comply with the Rules and the July 21 Order. Accordingly, the court concludes that Sykes was not substantially justified in refusing to comply, and Rosen cannot avoid payment of attorney's fees on this basis.

12

3.   <u>No Circumstances Making an Award Unjust</u>

In the alternative, Rosen argued that other circumstances would make an award of reasonable expenses against Rosen unjust. To support this claim, Rosen argued that Sykes and Rosen were acting in good faith, and Rosen's belief that it was in Sykes's best interest to assert the Fifth Amendment right "was certainly reasonable as he found a plethora of authority to support it." Opp. Mem. of Rosen at 11.  According to Rosen, a lawyer who counsels disobedience to a court order acts within ethical bounds so long as he has a good-faith basis for believing the order is invalid.  Rosen further argued that <u>Maness</u> stood for the principle that counsel should not be punished for advising a client in good faith to assert his Fifth Amendment right even if doing so would mean non-compliance with a court order.  <u>Id.</u> at 12-13 (citing to 419 U.S. at 465-66, 70).

The court disagrees with such a position.  To start, <u>Maness</u> concerns a case in a which a lawyer was cited for criminal contempt, whereas Rosen is now merely subject to the sanction of attorney's fees.  <u>Id.</u> at 458.  Additionally, Rosen did not in the underlying discovery dispute successfully convince the court that a real danger of self-incrimination loomed for Sykes.  In the absence of any new arguments introduced by Rosen on this issue, the court continues to remain unconvinced that Sykes faced the

same "substantial possibility of self-incrimination" at stake in
Maness.  Id. at 452.

Most importantly, Rosen's interpretation of Maness
overstates its reach and ignores a key distinction with the
circumstances in this case.  The Supreme Court stated, in
announcing its holding:

> [T]he issue is whether in a civil proceeding a lawyer
> may be held in contempt for counseling a witness in
> good faith to refuse to produce court-ordered materials
> on the ground that the materials may tend to
> incriminate the witness in another proceeding. We hold
> that on this record petitioner may not be penalized
> even though his advice caused the witness to disobey
> the court's order.

Id. at 464.

The Supreme Court qualified this rule, however, with a good-
faith requirement:

> In applying these principles it is important to
> note what this case does not involve: . . . there is no
> contention here as to lack of good faith or reasonable
> grounds for assertion of a Fifth Amendment claim.
>
> . . . .
>
> [T]here may be instances where advice to plead the
> Fifth Amendment could be given in bad faith, or could
> be patently frivolous or for purposes of delay, and
> such instances would present far different issues from
> those here.

Id. at 468, 470, n.9 (emphasis added).

Unlike Maness, in this case there was a contention that
Rosen lacked good faith in advising his client to ignore the

14

discovery requests and to assert his privilege at such a late

date.   The delay tactics employed are ample evidence of this lack

of good faith.   As the court chronicled in its Sept. 20 Order,

> Sykes's first assertion of the privilege occurred
> on August 9, 2011, a total of 57 days after the
> original deadline to respond to the discovery requests.
> The interrogatories and requests for production of
> documents were served upon Sykes, pursuant to Rule
> 69(b) of the Federal Rules of Civil Procedure, which
> governs post-judgment discovery.   Rule 33(b)(2), which
> governs the time for answering or objecting to
> interrogatories, requires, in pertinent part, that
> "[t]he responding party must serve its answers and any
> objections within 30 days after being served with the
> interrogatories."   Rule 34(b)(2) required Sykes to
> respond to the requests for production fo documents
> within thirty days after service of the requests, and
> Sykes was obligated to state in his response any
> objection he had to any of the requests.
>
> Sykes ignored the deadlines, as well as the letter
> that Receiver sent requesting compliance.   After the
> court issued an order granting Receiver's motion to
> compel and requiring that Sykes respond to the requests
> by August 8, 2011, Sykes ignored that order.   As the
> record shows, Sykes chose not to assert his privilege
> until _after_ the deadlines imposed by the Rules of
> Procedure had passed--nearly two months after the
> interrogatories and requests for production were
> served.   This was sixteen months after he knew that his
> company was under investigation from the U.S.
> Attorney's Office, and twenty-one months after a final
> judgment had been issued against him.

Sept. 20 Order at 12-13.

The inevitable result of Rosen's position, in allowing

attorneys to advise their clients to ignore court orders, "would

be to cripple orderly processes of trial and appeal on which

enforcement of the laws depends." <u>Kleiner v. First Nat'l Bank of</u> <u>Atlanta</u>, 751 F.2d 1193, 1207-09 (11th Cir. 1985).  As a fundamental rule, orders of the court "<u>must be obeyed</u> until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process. . . ." <u>United States v.</u> <u>Dickinson</u>, 465 F.2d 496, 509 (5th Cir. 1972), <u>cert. denied</u>, 414 U.S. 979 (1973).  Parties and counsel alike are bound by this admonition.  <u>Maness</u>, 419 U.S. at 459.  If the order appears to be incorrect, the proper course of action lies not in disobedience, but in seeking review, such as the filing of an appeal.  <u>In re</u> <u>Grand Jury Proceedings</u>, 601 F.2d 162, 168-69 (5th Cir. 1979).

The arguments that Rosen previously raised in defense of Sykes's non-compliance also cause the court to doubt that his advice was given in good faith or that it was based on reasonable grounds.  For instance, Rosen claimed that his advice was based on his mistaken belief that California law controlled discovery. Mot. for Protective Order at 20.  However, as the court noted in its Sept. 20 Order, the federal rules or Texas practice, not California law, govern the post-judgment discovery served.  <u>See</u> <u>Nat'l Gas Pipeline Co. of Am. v. Energy Gathering, Inc.</u>, 2 F.3d 1397, 1405 (5th Cir. 1993); Fed. R. Civ. P. 69(a)(2).  The fact that Rosen was a "securities attorney for over 35 years," Opp. Mem. of Rosen, App., Rosen Decl. 2, makes it unlikely that he was

16

not privy to this basic procedural rule, or that he was acting in good faith in providing such erroneous advice.

Under such circumstances, the court concludes that the imposition of attorney's fees is appropriate. Had Rosen truly acted in good faith, he would have advised his client to assert the privilege in a timely manner. Moreover, he would have advised his client to assert the privilege in a sufficiently specific fashion so as to allow the court to understand the reach of the privilege. Rosen did neither of those things.

To be clear, Rosen has not met his burden to show that his lack of good faith was not at issue in this case, or that his advice to belatedly assert the privilege was based on reasonable grounds. Consequently, the court finds no special circumstances, and Sykes has identified none, that would render an attorney's fees award unjust.

4.  Reasonableness of Attorney's Fees

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorney's fees. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Id. The lodestar is presumed to yield a reasonable fee. La. Power & Light Co. v. Kellstrom, 50 F.3d 319,

17

324 (5th Cir. 1995).  Where "an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is _prima facie_ reasonable." La. Power & Light, 50 F.3d at 328.

Receiver stated in a sworn declaration that he incurred $14,946.50 in attorney's fees in the work that he did because of Sykes's failure to comply with the July 21 Order.  This work included researching and drafting the motion to compel discovery, the opposition to the motion to stay proceedings and for protective order, and the request for attorney's fees.  Reply Br., Supplemental Berg Decl.  Receiver also stated that he attempted to resolve his dispute with opposing counsel before filing the request for attorney's fees.  Req. for Attorneys' Fees at 2-3.

Receiver has submitted two time sheet tables in support of the request for attorney's fees.  The first table, attached to the request, applies to the attorney's fees incurred in filing the two motions to compel, the opposition to the protective order, and the request for attorney's fees.  This table indicates Receiver did the research and prepared the described pleadings for 25.4 hours of work at a rate of $350 an hour for a total fee

of $8,890, and that Smith, an associate at the same firm who was supervised by Receiver, also did work on the pleadings for 7.9 hours at a rate of $235 an hour for a total fee of $1,856.50. Req. for Attorneys' Fees, App., Ex. A., Berg Decl. The total fee, for both Receiver and Smith, on the first table, is $10,746.50. Id.

The second table is attached to Receiver's reply brief, which was directed to Rosen's opposition memorandum. This second table covers the work Receiver did on the reply brief, and indicates that Receiver worked on the reply brief for 12 hours at a rate of $350 an hour, for a total fee of $4,200. Reply Br., Supplemental Berg Decl. Receiver did not request any upward or downward adjustment of his fee based on the lodestar, and the court concludes that under the facts there is no need for such an adjustment.[7]

In Rosen's opposition to the request for attorney's fees, he does not dispute the necessity for the work or the reasonableness of the hourly rate. Rather, Rosen's opposition is predicated on the argument that the fees are not warranted at all, for the reasons already discussed. Rosen contends that the request for

---

[7]After determining the lodestar, the court must then consider the applicability and weight of the twelve factors set forth in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). The court can make upward or downward adjustments to the lodestar if the Johnson factors warrant such modifications. See Watkins v. Fordice, 7 F.3d 453 (5th Cir. 1993).

fees "must be denied in its entirety," Opp. Mem. of Rosen, but offers no challenge to reasonableness of the fee as it is calculated.  Despite the absence of such a challenge from Rosen, the court will nevertheless conduct its own inquiry into the reasonableness of the award.

Under Rule 37, a party and its counsel "can only be held responsible for the reasonable expenses [including attorney's fees] caused by their failure to comply with discovery". Chapman & Cole & CCP, Ltd. v. Itel Container Int'l B.V., 865 F.2d 676, 687 (5th Cir.), cert. denied, 493 U.S. 872 (1989).  Accordingly, under Rule 37, Receiver may recover reasonable expenses, including attorney's fees, for the work on the motion to compel discovery, the opposition to the motion for protective order, and the request seeking attorney's fees. Tollett v. City of Kemah, 285 F.3d 357, 368 (5th Cir. 2002).

The court, after having reviewed the motion to compel discovery, the opposition to the motion for protective order, and the request for attorney's fees, finds that most of the total time expended was reasonably required to perform legal research, and write and file the above pleadings and responses.  The only concern the court has involves the work done on January 18, 2012, that were devoted to "[r]esearch into the Maness line of cases" and "review [of] additional cases." Reply Br., Supplemental Berg

Decl. 2.  The court is reducing the hours that was devoted to that work from 4.5 hours to 2.25 hours.  According to the two declarations, Receiver worked a total of 37.5 hours on the motions and responses.  To reflect this reduction, the court is subtracting 2.25 hours from 37.5 hours that Receiver worked, so that the reduced total is 35.25 hours.

For Receiver, the court therefore finds that 35.25 hours was a reasonable amount of time to perform legal research and prepare the motion to compel discovery, the opposition to the motion for protective order, and the request for attorney's fees.  For Smith, the court finds that 7.9 hours was a reasonable amount of time of work to perform legal research and prepare the above pleadings.  The court did not find any charges for duplicative work between Receiver and Smith in the listed hours.

As for the hourly rate, the court believes that the hourly rates charged, $235 for Smith and $350 for Receiver, are reasonable given prevailing market rates in this area and the complexity of the issue.  The court finds that a reasonable hourly billing rate for the legal work performed by Receiver is $350 an hour and a reasonable hourly billing rate for an associate such as Smith is $235 per hour.  Therefore, the court finds a reasonable total fee for Receiver is $12,337.50 and for Smith is $1,856.50.  In total, for both, would be $14,194.00.

III.

<u>Conclusion and Order</u>

For the reasons discussed above, the court finds that Receiver is entitled to recovery reasonable expenses, including attorney's fees, from Rosen, caused by Sykes's failure to comply with the court's July 21 Order.  Sykes was not substantially justified in failing to comply with the July 21 Order or in his asserting his Fifth Amendment privilege long after the deadline for compliance.  The legal advice that Rosen gave to Sykes unduly imposed unnecessary burdens on the court and improperly delayed the efforts to collect the money that Sykes still owed on the judgment.  Since there is much evidence in the record to support the contention that Rosen was not acting in good faith in providing this advice, the court concludes that an award of attorney's fees against him would not be unjust in these circumstances.  Accordingly, the request for attorney's fees pursuant to Rule 37 37(b)(2)(C) should be granted.

Therefore,

The court ORDERS that Receiver, Lars Berg, have and recover from Rosen the amount of $14,194.00.

SIGNED February 3, 2012.

JOHN McBRYDE
United States District Judge

22